UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60106-CIV-MARTINEZ/SNOW

DEMETRIUS ARMOND BRIGHT,

     Plaintiff,

     vs.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

     This cause is before the Court on Plaintiff's Complaint seeking judicial review of a final decision of the Social Security Administration denying the Plaintiff's application for disability benefits. The Complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 401, et seq., and was referred to United States Magistrate Judge Lurana S. Snow for Report and Recommendation.

## I. PROCEDURAL HISTORY

     The Plaintiff filed an application for disability and Supplemental Security Income (SSI) benefits on July 9, 2018, alleging disability since June 24, 2018 as a result of status post cerebral infarction, hypertension, eye problems, degenerative disc disease and anxiety. The application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before Administrative Law Judge (ALJ) Gregory Moldafsky on May 14, 2020. The Administrative Law Judge found that the Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied the Plaintiff's request for review on August 18, 2020. The

Plaintiff then filed this action seeking judicial review of the decision of the Commissioner.

## II. FACTS

The Plaintiff was born on June 12, 1975 and has a high school education. His past relevant work was as an order picker and truck cleaner.  He has not worked since his alleged onset date of June 24, 2018.  (R: 46-48, 58,269-71)

The medical record reflects that on June 24, 2018, the Plaintiff presented to the Northwest Medical Center, Miramar, Florida emergency department, complaining of left-sided neck pain, nausea and vomiting.  The primary clinical impression was hypertensive emergency; secondary impressions were cocaine abuse, COPD and left side neck pain.  The Plaintiff was admitted to the hospital and on June 25, 2018, he was diagnosed with an underlying cerebrovascular accident (CVA) and was placed on stroke medications. By the time of his discharge on July 6, 2018, the Plaintiff had made slow but significant progress.  He was able to swallow soft food, walked well with a rolling walker, and his left upper extremity had returned to normal strength.  He was discharged to his home, with instructions to check his blood pressure three times per week, avoid driving and no use of drugs.  The Plaintiff was able to bear his full weight.  (R:327-28, 340)

On November 26, 2018, the Plaintiff presented to the Broward Health North, Deerfield Beach, Florida emergency department with complaints of eye pain. Eye examination revealed a corneal ulcer in the Plaintiff's left eye, with visual acuity of 20/30.  Musculoskeletal examination revealed normal range of motion, normal strength and no tenderness, swelling or deformity.  Antibiotics were prescribed to treat the corneal ulcer. (R:448-51)

On January 17, 2019, a consultative physical examination of the Plaintiff was performed by Stanford A. Williamson, D.O.  Dr. Williamson noted that the Plaintiff had a history of hypertension and a myocardial infarction which had occurred in 2015.  The Plaintiff reported deficits in his left side following the stroke, as well as vision, swallowing and speech problems.   He had not had inpatient or outpatient rehabilitation immediately after the stroke in June 2018, but there nevertheless had been improvement in his speech and strength on the left side.  However, the Plaintiff had been suffering for several months from an infection in his left eye.  (R:470)

Dr. Williamson's examination of the Plaintiff's eyes revealed visual acuity of 20/50 in the right eye, but the doctor could not obtain a value for the Plaintiff's left eye.  Examination of the Plaintiff's extremities yielded normal results, with normal strength and range of motion in upper and lower extremities.  Sensation was grossly intact, seated straight leg raising was negative and reflexes were normal.  However, the Plaintiff was unable to stand on his heels or toes or to perform tandem walking. The Plaintiff's blood pressure was 140/90. Dr. Williamson's diagnostic impression was CVA and hypertension. (R:470-71)

Dr. Williamson provided two addenda to his consultative examination report.  On January 23, 2019, the doctor stated, "The walker used by the claimant will be necessary for safe independent gait and transfers due to problems attributed to stroke, including weakness at the left side, blurred vision and photophobia."  (R:473) On January 25, 2019, Dr. Williamson added that the Plaintiff had exhibited no gait abnormalities while using the walker and no overt signs of gait abnormality had been observed in the examination room in the few steps taken by the Plaintiff without the walker.  However, balance deficits were noted during advanced activities challenging balance.  (R:475)

On January 25, 2019, Khavir Sharieff, D.O., a state agency non-examining physician, completed a Physical Residual Functional Capacity Assessment of the Plaintiff.  Dr. Sherieff opined that the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand/walk or sit for about 6 hours during an 8-hour workday, and had an unlimited ability to push and/or pull within lifting restrictions. The Plaintiff had no postural, manipulative, visual or communicative restrictions.  The Plaintiff's only environmental restriction was the need to avoid concentrated exposure to hazards such as machinery and heights.  On April 22, 2019, at the reconsideration level, Isaac Moore, M.D., another non-examining state agency physician, made the same findings. (R:78-80, 103-105)

On February 28, 2019, the Plaintiff presented to Henry E. Glick, M.D., an eye specialist, complaining of moderately blurred vision.  The Plaintiff's visual acuity was assessed at 20/50 on auto refraction and 20/40 on manifest refraction.  Corneal scarring was detected in one eye.  Dr. Glick discussed with the Plaintiff various treatment options, including contact lenses, topical corticosteroid eye drops and laser treatment.  The Plaintiff was to return in one week, but there is no record of any follow-up visit.  (R:476-77)

On March 4, 2019, the Plaintiff presented to Shalab U. Kidwai, M.D., for a neurological consult.  Examination revealed that the Plaintiff was oriented in all spheres with normal memory and speech.  Motor strength was normal in all major muscles, including the left upper and lower extremities.  Sensory to pinprick was normal, vibration was slightly reduced in the upper extremities and absent in the lower extremities.  Coordination examination was normal with finger to nose testing, but heel and shin could not be done.  Romberg test was positive, with tandem station unsteady and gait slightly broad-based and unsteady.  Dr. Kidwai's noted no focal

deficit from the Plaintiff's stroke. His impression was that the Plaintiff's unsteady gait was the result of diabetic neuropathy and the possibility that the stroke had affected the Plaintiff's posterior circulation system. The doctor advised the Plaintiff to walk with a cane or a walker and to keep his diabetes, blood pressure and cholesterol under control. (R:535)

On July 22, 2019, the Plaintiff presented to Surjit Athwal-Johal, M.D. for a regular office visit, reporting that he had continued difficulty sleeping and requesting stronger medication. The doctor prescribed Klonopin and increased the dosage of the Plaintiff's trazodone prescription. The Plaintiff returned to Dr. Athwal-Johal on October 23, 2019, for follow-up after an emergency room visit to address left side pain with headaches. The doctor continued the Plaintiff on Klonopin (clonazepam) for anxiety and prescribed cyclobezaprine for muscle spasms. (R:507-511)

On November 11, 2019, the Plaintiff returned to Dr. Kidwai, complaining of knee pain radiating upward to his groin area. The Plaintiff denied any pain in his legs or feet. Dr. Kidwai noted that the Plaintiff had completely recovered from his stroke, with no residual weakness on his left side. Additionally, although the Plaintiff had diabetic neuropathy, it was asymptomatic and only caused some balance problems. Physical examination revealed normal range of motion in the Plaintiff's lumbar spine and straight leg at 90 degrees while seated with no back or leg pain. Dr. Kidwai found no neurological explanation for the Plaintiff's left knee pain, and recommended that the Plaintiff be evaluated by an orthopedist. Meanwhile, Dr. Kidwai instructed the Plaintiff to continue using a cane, avoid walking in darkness, and getting up or turning fast. (R:534)

On December 19, 2019, the Plaintiff presented to M.A. Hajlanpour, M.D., an orthopedist, for evaluation of his left knee pain and weakness with abnormal gait.

Dr. Hajlanpour noted that although the Plaintiff's left lower extremity was functional, he had weak quadriceps and wasting of the muscles. The Plaintiff also had a somewhat abnormal stepping gait, which likely would improve over time. X-rays of the Plaintiff's pelvis and knees were unremarkable. Dr. Hajlanpour prescribed physical therapy three times per week for four weeks, provided the Plaintiff with knee exercises to perform at home daily and advised him to lose weight. (R:532-33)

On January 15, 2020, the Plaintiff returned to Dr. Hajlanpour for follow-up. The Plaintiff reported that physical therapy, water exercises and modification of his activities had resulted in a 90% improvement in his knee pain. The Plaintiff used only non-prescription anti-inflammatory medication for pain. At the time of the visit, the Plaintiff was taking only low-dose aspirin. Orthopedic examination revealed no joint swelling or effusion; flexion and extension had improved from the last visit; no point tenderness to palpation around the left knee, and ambulation with a better gait using a quad cane. Dr. Hajlanpour encouraged the Plaintiff to continue with his exercises. (R:528)

On March 11, 2020, the Plaintiff told Dr. Hajlanpour that he was doing much better and was happy with his improvement. He stated that rest and physical therapy had helped to alleviate his symptoms, but using the stairs did aggravate his condition. Examination revealed a satisfactory range of motion in the Plaintiff's left hip, knee, foot and ankle, with no tender point around the knee. The Plaintiff had a mildly antalgic gait, which he was working on, and his left lower extremity continued to be neurologically intact. The Plaintiff was given another prescription for physical therapy three times per week for four weeks and advised to continue his home exercises. (R:523)

At the administrative hearing, the Plaintiff testified that he resided with his wife and that his driver's license was suspended.  The Plaintiff used Uber to get around.  In 2018, the Plaintiff worked for UPS cleaning and fueling trucks.  Prior to that job, the Plaintiff worked for Sysco as an order picker, racking up orders and taking them to the dock.  This work required the Plaintiff to lift up to 25 pounds.  (R:45-48)

The Plaintiff stated that he was unable to work because he could barely walk and had experienced eye problems since the time of his stroke.  At the time of the hearing, the Plaintiff had a discharge from his left eye and his vision had become blurry again.  The Plaintiff testified that he could not work at a seated job because of back problems.  He explained that if he sat, walked or stood up for too long he experienced weakness on the left side of his back.  The Plaintiff also was required to use a cane or a walker, and he became dizzy when holding his head down.  In addition, the Plaintiff's left arm was weak and he sometimes lost his voice.  (R:48-49)

The Plaintiff testified that since the time of his stroke, he sometimes forgot things and could not concentrate.  He was taking anxiety pills that had been prescribed by his primary care physician.  In his daily life, the Plaintiff sometimes needed help from his wife, including bathing him if he became dizzy while in the shower.  During the day the Plaintiff watched TV and colored with markers, and did some walking. (R:50-51, 56)

The Plaintiff stated that he was 5'8" tall and weighed about 220 pounds. Prior to being diagnosed with diabetes, the Plaintiff weighed between 189 and 195 pounds.  He testified that medication had lowered his blood pressure, but he had to be careful with what he ate.  The Plaintiff had occasional shortness of breath from his COPD, but did not use an inhaler.  He had some numbness on his left side, but had no feeling at all on his right side.  The Plaintiff had pain in his lower back, his side and

his left knee, but did not have any swelling.  The side effects of his medications were occasional dizziness and drowsiness.   The Plaintiff needed to take sleeping pills at night and took a nap about twice per week.  He became dizzy when he leaned his head down or stooped.  (R:51-55)

Ashley Johnson, a vocational expert (VE) testified that the Plaintiff's past relevant work was as an order picker (medium work with an SVP of 2) and truck cleaner (medium work with an SVP of 1).  The VE was asked to consider an individual of the Plaintiff's age, education and past jobs, who could perform light work, except that he could stand/walk for 4 hours during an 8-hour workday; could push/pull only occasionally with his left lower extremity; could occasionally climb ramps or stairs and could never climb ladders, ropes or scaffolds; could occasionally stoop, balance, kneel and crouch, but could never crawl or work at unprotected heights, and was limited to simple (SVP levels 1 or 2), routine tasks in a work environment that was not fast paced and Dimitrouleas not have strict production quotas.  The VE testified that such a person could not perform the Plaintiff's past relevant work, but could perform jobs existing in significant numbers in the national economy such as parts assembler, shipping/receiving weigher and electronics worker, each of which is at the light exertional level with an SVP of 2. (R:58-59)

The VE testified that if the same person were limited to sedentary work, he could perform the jobs of document preparer, order clerk and bench hand, each of which exists in significant numbers in the national economy and is at the sedentary exertional level with an SVP of 2.  She also stated that the hypothetical individual would be able to perform all of the light and sedentary jobs she had mentioned even if he needed a cane for ambulation, as long as he could carry up to 20 pounds with the arm not used to hold the cane.  However, if the individual needed to use a walker

rather than a cane, he could not do any work.  Also, each of the light and sedentary jobs requires frequent near visual acuity, but not far acuity.  Finally, if the person would be off task for more than 10% of the workday or absent from work more than once per month, he could not perform any work.  (R:60-63)

## III. DECISION OF THE ALJ

The ALJ began by finding that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023; had not engaged in substantial gainful activity since his alleged onset date of June 24, 2018, and had the severe impairments of status post cerebral infarction, hypertension, central corneal opacity of the left eye with corneal scarring, degenerative disc disease of the cervical spine and anxiety disorder.  The ALJ found that the Plaintiff's kidney disease, COPD, type-2 diabetes and obesity were non-severe.  (R:24-25)

Next, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  In particular, the ALJ found that the Plaintiff's mental impairment did not cause more than a moderate limitation in the area of concentrating, persisting or maintaining pace, and no more than mild limitations in the other four pertinent areas.  The ALJ noted that there was no indication that the Plaintiff had required specialized mental health treatment, such as from a psychiatrist or psychologist, and had not required adjustments to his anti-anxiety medications or dosage.  The ALJ pointed out that it appeared that the Plaintiff had not refilled this medication after the initial prescription.  Additionally, mental examinations of the Plaintiff had been unremarkable, showing grossly intact mood and affect, a cooperative attitude and normal judgment and insight.  (R:25-27)

The ALJ then determined that the Plaintiff had the residual functional capacity to perform light work, except that the Plaintiff could only stand and walk for 4 hours during an 8-hour workday; could only occasionally push and pull with the left lower extremity; could occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds; could occasionally stoop, balance, kneel and crouch, but could never crawl or work at unprotected heights; was limited to simple (SVP levels 1 and 2) tasks in a work environment that is not fast paced and does not have strict production quotas (e.g. work that is goal-based or measured by end result), and limited to no more than occasional fine near and fine far visual acuity. (R:27)

After summarizing the Plaintiff's written allegations and hearing testimony, the ALJ assessed that although the Plaintiff's medically determinable impairments reasonably could be expected to cause symptoms he alleged, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R:28-29) During his review of the medical evidence, the ALJ pointed out that by March 2019, the Plaintiff's neurologist, Dr. Kidwai, determined that the Plaintiff exhibited no focal neurological defects resulting from his stroke. Dr. Kidwai's examination revealed that the Plaintiff had normal strength in all major muscles, despite a positive Romberg test, slightly reduced vibration sense in the lower extremities and an unsteady tandem gait. In November 2019, Dr. Kidwai noted that the Plaintiff had recovered from his stroke with no residual weakness on the affected left side. The Plaintiff's diabetic neuropathy was asymptomatic in terms of pain and paresthesia, but apparently was causing some balance problems. Dr. Kidwai referred the Plaintiff to an orthopedist for his left knee pain. (R:29)

The ALJ next pointed out that in December 2019, the Plaintiff's orthopedist, Dr. Hajlanpour, observed that the Plaintiff's left lower extremity was functional, but the Plaintiff had weak quadriceps and wasting muscles on the left as the result of his stroke. The doctor noted a somewhat abnormal gait which likely would improve over time. He prescribed a course of physical therapy, which resulted in a 90% improvement in the Plaintiff's left knee by the following month. Dr. Hajlanpour determined that the Plaintiff was doing very well overall and was taking only over-the-counter medications for pain. Flexion and extension of the left knee had improved, as had the Plaintiff's gait. By March 2020, the Plaintiff had only a mildly antalgic gait, and satisfactory range of motion in his left hip, knee, foot and ankle. The Plaintiff told Dr. Hajlanpour that he was doing much better, and the doctor advised the Plaintiff to continue physical therapy and to use an assistive device for walking. (R:29-30)

Based on these medical findings, the ALJ determined that the Plaintiff was limited to less than the full range of light work, in that he could stand and walk for only 4 hours during an 8-hour workday; was limited to only occasional pushing and pulling with his left lower extremity; could only occasionally climb ramps and stairs, stoop, balance, kneel and crouch, and could never crawl, climb ropes, ladders or scaffolds or work at unprotected heights. Nevertheless, no additional exertional, postural or manipulative limitations were supported by the record for several reasons: the Plaintiff had regained strength in his left upper extremity upon leaving the hospital after his stroke; he experienced no motor loss on his right side; he had no residual weakness in his left lower extremity within 9 months of his stroke; the Plaintiff's knee pain and gait improved within a month of starting physical therapy and later on the Plaintiff's gait was only mildly antalgic and he had satisfactory range

of motion in the left lower extremity, with no knee tenderness.  Moreover, during the consultative examination by Dr. Williamson, the Plaintiff had no range of motion deficits in the cervical or lumbar spine; his grip and pinch were functional bilaterally; reflexes were normal, and straight leg raising tests were negative.  Although the record showed that the Plaintiff had mild degenerative changes in the cervical spine, the Plaintiff did not complain of neck pain and had no loss of range of motion or strength in his neck or upper extremities.  Finally, although the Plaintiff initially used a walker, the record reflects that he graduated to using a cane, as noted by his neurologist. (R:30)

The ALJ next noted that the Plaintiff had experienced eye pain after his stroke and was treated with antibiotics for a corneal infection.  Later the Plaintiff was diagnosed with a large central corneal ulceration in his left eye, which also was treated with antibiotics.  Nevertheless, using both eyes the Plaintiff's vision was 20/30.  In February 2019, the Plaintiff complained of blurry vision, and stated that his left eye felt dry and was sensitive to light.  His best corrected vision in the right eye was variously assessed as 20/50 or 20/40.  Based on this evidence, the ALJ found that the Plaintiff was limited to no more than occasional use of fine near or fine far visual acuity.  (R:30-31)

Finally, the ALJ observed that the Plaintiff had been treated by his primary care physician for anxiety.  As a result, the ALJ limited the Plaintiff to simple, routine tasks in a work environment that is not fast paced and does not have strict production quotas.  The ALJ reiterated that the Plaintiff had not required specialized mental health treatment and mental status examinations had been unremarkable.  Accordingly, no additional limitations to the Plaintiff's residual functional capacity were warranted.

The ALJ found the opinions of the state agency non-examining physicians not fully persuasive. Although these opinions were supported by medical evidence available at the time they were rendered, the ALJ believed that residual problems with the Plaintiff's gait limited him to standing and walking for only 4 hours during an 8-hour workday. Additionally, the ALJ pointed out that the opinions of the state agency consultants did not account for the Plaintiff's vision problems and anxiety. Therefore, the ALJ's residual functional capacity assessment was more restrictive that the assessments of these physicians.

Based on the testimony of the VE, the ALJ found that the Plaintiff could not perform any of his past relevant work. However, the Plaintiff could perform the jobs of small parts assembler and order clerk, each of which is light, unskilled and exists in significant numbers in the national economy. The ALJ determined the VE's testimony to be consistent with the information contained in the Dictionary of Occupational Titles (DOT). Accordingly, the ALJ concluded that the Plaintiff was not under a disability for purposes of the Social Security Act.

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

The Plaintiff seeks reversal or remand on two grounds: (1) the ALJ erred by failing to develop the record by ordering a consultative mental examination, and (2) the ALJ failed to properly credit the Plaintiff's subjective allegations of pain and other symptoms.

The Commissioner contends that the decision of the ALJ must be affirmed because it is supported by substantial evidence and the correct legal standards were applied.

13

## V. <u>RECOMMENDATIONS OF LAW</u>

At issue before the Court is whether the final decision of the Commissioner, as reflected by the record, is supported by substantial evidence. "Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by substantial evidence." <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1985). Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233 (11th Cir. 1983). The Court must review the record as a whole to determine if the decision is supported by substantial evidence. <u>Bloodsworth</u>, 703 F.2d at 1239. The Court must also determine whether the Administrative Law Judge applied the proper legal standards. No presumption of validity attaches to the Commissioner's determination of the proper legal standards to be applied. <u>Davis v. Shalala</u>, 985 F.2d 528, 531 (11th Cir. 1993) (citing <u>Bridges v. Bowen</u>, 815 F.2d 622, 624 (11th Cir. 1987)).

In making a disability determination, the ALJ must perform the sequential evaluation outlined in 20 C.F.R. § 404.1520. First the claimant must not be engaged in substantial gainful activity after the date the disability began. Second, the claimant must provide evidence of a severe impairment. Third, the claimant must show that the impairment meets or equals an impairment in Appendix 1 of the Regulations. If the claimant fails to provide sufficient evidence to accomplish step three, the analysis proceeds to step four. In step four, the ALJ must determine the claimant's residual functional capacity, then determine if the claimant can perform his or her past relevant work. The claimant has the burden of proving the inability to perform past relevant work. If the claimant's evidence shows an inability to perform past relevant work, the burden shifts to the ALJ in step five. The ALJ must show that

14

there is other gainful work in the national economy which the claimant can perform. Once the ALJ identifies such work, the burden returns to the claimant to prove his or her inability to perform such work.

## A. <u>Failure to Develop the Record</u>

The Plaintiff first asserts that the ALJ was required to develop the record by ordering a consultative mental examination of the Plaintiff. It is well-established that the ALJ has a basic duty to develop a full and fair record. <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(d). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." <u>Ellison</u>, 355 F.3d at 1276; 20 C.F.R. § 416.912(a). A consultative examination is ordered "to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient" to make a determination or decision" on a claim. 20 C.F.R. § 1519a(b). An ALJ is not obligated to seek independent, additional expert medical testimony where information in the record is sufficient for a decision. <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1278 (11th Cir. 1999).

In the instant case, the Plaintiff testified that since the time of his stroke, he sometimes forgot things and could not concentrate and that he was taking anxiety pills that had been prescribed by his primary care physician. This testimony is corroborated by the treatment records of Dr. Athwal-Johal, who prescribed Klonopin to treat the Plaintiff's anxiety in 2019. The ALJ fully credited the Plaintiff's testimony, limiting the Plaintiff to simple, routine tasks in a work environment that is not fast paced and does not have strict production quotas. The ALJ determined that additional restrictions were not warranted because the Plaintiff not required specialized mental health treatment and mental status examinations had been unremarkable.

The undersigned concludes that there was sufficient evidence in the record from which the ALJ could make an informed decision regarding the Plaintiff's mental impairment and a consultative examination was not required. Accordingly, no reversal or remand is required on this ground.

## B. The Plaintiff's Subjective Testimony

The Plaintiff also asserts that the ALJ erred by failing to articulate specific and adequate reasons for his decision not to fully credit the Plaintiff's subjective testimony regarding his pain and other limitations. The ALJ must consider a claimant's subjective testimony regarding pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Mason v. Bowen, 791 F.2d 1460, 1462 (11th Cir. 1986); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). However, the ALJ may reject a claimant's testimony regarding pain as not credible, and that determination must be upheld if it is supported by substantial evidence. Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984).

As described in detail earlier in this Report, the ALJ painstakingly outlined the record evidence supporting each aspect of his residual functional capacity assessment, making very clear his basis for failing to give full credit to the Plaintiff's testimony regarding his inability to work. The undersigned finds there is substantial evidence in the record to support the ALJ's assessment of the Plaintiff's allegations. Accordingly, there is no legal basis to disturb the ALJ's conclusion that the Plaintiff is not under a disability for purposes of the Social Security Act.

## VI. <u>CONCLUSION</u>

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Plaintiff's Motion for Summary Judgment be DENIED and the Commissioner's Motion for Summary Judgment be GRANTED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 23rd day of November, 2021.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Jose E. Martinez

All Counsel of Record